```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

DONALD HOLTON,

              Plaintiff,

vs.                              Case No.  2:04-cv-450-FtM-29DNF

S. PAREKH and C. KILPATRICK,

              Defendants.
_____

## **OPINION AND ORDER**

### I.

This matter comes before the Court upon Defendants' "Motion for Summary Judgment" (Doc. #23).  On April 5, 2007, Plaintiff filed a Response to the Defendants' Motion (Doc. #30) and attached an Affidavit.  This matter is now ripe for review.

Plaintiff, who is proceeding *pro se* and currently incarcerated within the Florida Department of Corrections, filed a Civil Rights Complaint form (Doc. #1) pursuant to 42 U.S.C. § 1983 on September 8, 2004.  The Complaint alleges an Eighth Amendment violation arising from the medical treatment Plaintiff received while incarcerated at Moore Haven Correctional (hereinafter "MHC").  Plaintiff names two Defendants: S. Parekh (doctor from MHC) and C. Kilpatrick (nurse from MHC).  Complaint at 1, 7 (2004).

### II.

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In re: Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., Slip Copy, 2006 WL 288932 *1 (M.D. Fla. 2006). "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Secretary of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must 'then go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted). Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Where, however, there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

**III.**

The facts construed in the light most favorable to the non-moving party are as follows: On September 5, 2002, Plaintiff awoke with "severe" abdominal pains and the pain became worse as the day progressed to the point that Plaintiff could hardly move and began to vomit "large amounts of blood." Complaint at 8-9. Plaintiff declared a "medical emergency" and was "forced" to walk to the Medical Department in spite of difficulty walking from the pain. Id. at 9. Plaintiff saw Nurse Kilpatrick and explained his

problems "in detail," told the nurse that he was vomiting large amounts of blood, and had difficulty urinating. Id. Nurse Kilpatrick told Plaintiff that his situation did not warrant a "medical emergency," told Plaintiff he was required to submit a sick call request, and returned Plaintiff to his housing unit. Id. Upon his return to his housing unit, Plaintiff began to complete the routine sick call request; however, Plaintiff declared a second medical emergency due to the pain. Id. at 10, 16.

On Plaintiff's second visit to the Medical Department, Plaintiff saw Nurse Dickson (not a named Defendant) who let Plaintiff remain in the infirmary for the night. Id. at 10. The following day Plaintiff saw Dr. Parekh at noon time. Dr. Parekh conducted an examination of Plaintiff's abdomen, using her hand and stethoscope, which caused Plaintiff more pain. Dr. Parekh diagnosed Plaintiff with food poisoning, and returned Plaintiff to his housing unit. Id.

Two days later, on September 8, 2004, Plaintiff declared a third medical emergency because his pain continued to worsen, he had difficulty breathing, and his stomach was swollen and stiff. Id. at 11. Again, Plaintiff saw Nurse Dickson who admitted Plaintiff to the infirmary. Plaintiff states when he urinated a brown liquid substance mixed with a large amount of blood, Nurse Dickson called a doctor from Hendry Medical Center (not a named Defendant). Id. This doctor took x-rays of Plaintiff's stomach and brought the x-rays to the hospital. Id. On September 9,

Plaintiff was transported to the hospital and saw Dr. Fidelly (not a named Defendant), took a second x-ray and informed Plaintiff that his appendix had ruptured.  Plaintiff had surgery the following day.  Id.

Plaintiff alleges that nurse Kilpatrick failed to provide medical assistance to him when his condition was easily recognizable.  Further, Plaintiff contends that Dr. Parekh failed to perform proper tests and thus misdiagnosed Plaintiff with food poisoning instead of appendicitis.  Id.  As relief, Plaintiff seeks one million dollars in damages.  Id. at 12.

**IV.**

In the Motion for Summary Judgment, Defendants rely upon the facts alleged in the Complaint and contend that "based upon the pleadings, there is no genuine issue of material fact."[1]  Mot. SJ at 1-4.  Defendants contend that the Complaint does not establish a delay or denial of medical care and further argue that to the extent that Defendant Parekh misdiagnosed Plaintiff, it was a "difference of opinions" as to the diagnosis.  Mot. SJ at 4.  Further, Defendants argue that the Court should dismiss the Complaint pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii) "for failure to state a claim upon which relief may be granted."[2]

---

[1]Defendants do not attach any exhibits, affidavits, or medical records to their five-page Motion for Summary Judgment.

[2]Defendants rely on the incorrect standard.  Failure to state a claim is the standard used at motion to dismiss stage of the
(continued...)

In Response, Plaintiff files an "Opposition to Defendants' Motion for Summary Judgment" and attaches his own Affidavit re-alleging the facts contained in the Complaint under oath. Plaintiff asserts that the Defendants' motion is premature since discovery was not conducted in this case.³ Response at 1. Plaintiff re-alleges the facts as contained in the Complaint and contends that the "misdiagnosis and denial of medical care caused a three day delay in treatment which delay caused [P]laintiff's vermiform appendix to become gangrenous and to rupture, producing peritonitis requiring emergency surgery to avoid death." Id. at 4.

**V.**

In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States. Parratt v.

---

²(...continued)
proceedings. Fed. R. Civ. P. 12(b)(6). In this case, Defendants filed an Answer and Affirmative Defense, which means a Motion to Dismiss would be deemed moot. The correct standard for an action in the motion for summary judgment stage is that the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.

³After Defendants filed their Answer and Affirmative Defenses, the Court entered a Case Management and Scheduling Order on November 28, 2005, setting the discovery deadline as February 1, 2007, and dispositive motions due by April 4, 2007. Defendants filed their Motion for Summary Judgment on January 17, 2007, prior to the close of discovery.

>> Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by, Daniels v. Williams, 474 U.S. 327 (1986); Burch v. Apalachee Community Mental Health Services, Inc., 840 F.2d 797, 800 (11th Cir. 1988), aff'd by, Zinermon v. Burch, 494 U.S. 113 (1990).

Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996), reh'g and suggestion for reh'g en banc denied, 98 F.3d 1355 (11th Cir. 1996); Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

"Deliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429 U.S. 97 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

To establish his Eighth Amendment claim, a plaintiff must prove both an objective and a subjective component. Farrow, 320 F.3d at 1243. To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. Kelley v. Hicks, 400 F.3d 1282, 1284 n.3 (11th Cir. 2005); Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1243. Deliberate indifference to a prisoner's future health can constitute an Eighth Amendment violation. Kelley, 400 F.3d at 1284; Powell v. Lennon, 914 F.2d 1459, 1464 n.10 (11th Cir. 1990).

To show the required subjective intent, a plaintiff must prove defendant acted with "deliberate indifference" by showing: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) by conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertent negligent, or even gross negligent, failure to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations omitted).

Delay of treatment for serious conditions can rise to the level of deliberate indifference where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. Taylor, 221 F.3d at 1259-60 (citing Hill v. Dekalb Reg'l Youth Ct., 40 F.3d 1176, 1187 (11th Cir. 1994)); Lancaster, 116 F.3d at 1425. Whether the delay was tolerable depends on the nature of the medical need and the reason for the delay. Farrow, 320 F.3d at 1247. A constitutional claim can exist for delayed treatment of a condition that does not require immediate attention. Id. An inmate who complains that delay in medical treatment rises to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay. Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176 (11th Cir. 1994). Further, the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Id.; Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994).

The Court finds that an inflamed appendix is an "objectively serious" medical condition and if left unattended poses a substantial risk of serious harm. Other Courts have agreed that appendicitis constitutes a serious medical need. Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004); Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000).

With regard to whether the Defendants exhibited deliberate indifference to Plaintiff's serious medical need, the record currently before the Court presents a question of material fact, which is better left for a jury to determine. Plaintiff declared his first medical emergency on September 5, complaining of severe pain, difficulty walking, inability to urinate, and vomiting blood. Defendant Nurse Kilpatrick returned Plaintiff to his housing unit, stating that Plaintiff's condition did not warrant a medical emergency. The same night, Plaintiff declared a second medical emergency to which a nurse, who is not a named defendant in this action, Nurse Dickson, recognized that Plaintiff's symptoms were serious and permitted Plaintiff to remain in the infirmary.

Plaintiff saw Defendant Dr. Parekh the following day and told the doctor his symptoms. Dr. Parekh conducted an examination using his hand and stethoscope, during which Plaintiff experienced more pain. Dr. Parekh did not conduct any further examinations in spite of the pain Plaintiff experienced. Plaintiff's condition did not improve after the doctor's diagnosis, rather Plaintiff's symptoms continued to worsen. Two days later, Plaintiff saw Nurse Dickson who called a doctor not affiliated with the jail, but from Hendry Medical Center, to perform an x-ray on Plaintiff. There was a five-day delay between the time Plaintiff first described the objectively serious conditions and Plaintiff's subsequent x-ray and surgery for a ruptured appendix.

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that Defendants ignored that risk. See McElligott, 182 F.3d 1248, 1256 (reasoning that although the defendant doctor did not diagnose Plaintiff with cancer and did not know he had cancer, a jury could find that defendants were aware of tremendous pain and illness and thus aware of a substantial risk of harm).  The jury could conclude that the care Plaintiff received by the Defendants was so inadequate that the Defendants violated the Eighth Amendment due to a failure to provide further diagnosis of and treatment for the severe pain Plaintiff was experiencing. McElligott, 182 F.3d at 1256-57.[4]

ACCORDINGLY, it is hereby

**ORDERED:**

---

[4] Further, Plaintiff contends in his Response to the Defendants' Motion for Summary Judgment that he had no opportunity to conduct discovery. A motion for summary judgment should be granted, after "adequate time" for discovery, when there remains no question of material fact. Celotex, 477 U.S. at 322.  It is unclear whether Plaintiff submitted requests for production of discovery to Defendants to which Defendants did not respond or whether *pro se* Plaintiff did not submit a timely discovery request.  The docket history reflects that on February 2, 2007, Plaintiff filed a "motion for accelerated discovery" (Doc. #26) and a "Motion for Leave to File Amended Discovery" (Doc. #28) to which Defendants did not file any responses.  The Court addressed Plaintiff's motions, noting that the motions were unclear and extended the deadline for Plaintiff's Response to the Summary Judgment until April 4, 2007. The discovery deadline set forth in the CMO was February 1, 2007. If Defendants did not respond to Plaintiff's timely discovery request, Plaintiff may deem it appropriate to seek sanctions against Defendants pursuant to Federal Rule of Civil Procedure 37.

Defendants' "Motion for Summary Judgment" (Doc. #23) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida, on this __11th__ day of May, 2007.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record